UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

| | |
|---|---|
| KARIN GEPP, | Civil Action No. |
| Plaintiff, | |
| -against- | **COMPLAINT** |
| | (Jury Trial Demanded) |
| THE STATE OF NEW YORK, d/b/a SING SING CORRECTIONAL FACILITY, NEW YORK STATE OFFICE OF MENTAL HEALTH, NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, MICHAEL AITCHISON, individually, and DINA MARQUEZ, individually, | |
| Defendants. | |

------------------------------------------------------------------X

Plaintiff KARIN GEPP, (hereinafter referred to as "Plaintiff"), by and through her attorneys, the DEREK SMITH LAW GROUP, PLLC, hereby complains of Defendants THE STATE OF NEW YORK, d/b/a SING SING CORRECTIONAL FACILITY, NEW YORK STATE OFFICE OF MENTAL HEALTH, NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION (hereinafter collectively referred to as "Defendants"), MICHAEL AITCHISON (hereinafter referred to as "AITCHISON"), and DINA MARQUEZ (hereinafter referred to as "MARQUEZ"), upon information and belief as follows:

## NATURE OF THE CASE

1. Plaintiff complains of Defendants pursuant to Title VII of the Civil Rights Act of 1964 as codified, 42 U.S.C. § 2000 to 2000e-17 (amended in 1972, 1978, and by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"), and to remedy violations of the laws of the State of New York based upon the supplemental jurisdiction of this Court pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966) and 28 U.S.C. §1367, seeking declaratory and injunctive relief and damages to redress the injuries that Plaintiff suffered as a result of, *inter alia* gender discrimination, hostile work environment, retaliation, and unlawful discharge by Defendants.

## JURISDICTION AND VENUE

2. Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under Title VII. The Court also has jurisdiction pursuant to 29 U.S.C. §2617; 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto.

3. Additionally, this Court has supplemental jurisdiction under the State law causes of action asserted in this action.

4. Plaintiff filed a complaint with The Equal Employment Opportunity Commission on or about March 14, 2018.

5. Plaintiff received a Notice of Right to Sue letter dated September 26, 2018.

6. Plaintiff has brought a claim within ninety (90) days of receiving the Right to Sue Letter.

7. Plaintiff satisfied all administrative prerequisites and is filing this complaint in a timely manner.

8. Venue is proper in the Southern District of New York under 28 U.S.C. 1391 (b)-(c) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred within the Southern District of New York.

## PARTIES

9. Plaintiff KARIN GEPP, is a female who resides in the State of New York, New York County.

10. At all times material, Defendant THE STATE OF NEW YORK d/b/a SING SING CORRECTIONAL FACILITY was and still is a governmental entity duly authorized to operate the Sing Sing Correctional Facility under the laws of the State of New York.

11. At all times material, Defendant NEW YORK STATE OFFICE OF MENTAL HEALTH was and still is a governmental entity duly authorized to operate in the Sing Sing Correctional Facility under the laws of the State of New York. NEW YORK STATE OFFICE OF MENTAL HEALTH operates psychiatric centers across the State, and also regulates, certifies and oversees programs, which are operated by local governments and nonprofit agencies.

12. At all times material, Defendant NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION was and still is a governmental entity duly authorized to operate the Sing Sing Correctional Facility

under the laws of the State of New York. NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION is responsible for the confinement and habilitation of approximately 48,000 individuals under custody held at 54 state correctional facilities and 35,500 parolees supervised throughout seven regional offices.

13. At all times material Defendants' THE STATE OF NEW YORK, NEW YORK STATE OFFICE OF MENTAL HEALTH, and NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION were joint employers as each maintained the power to hire and fire, supervise, determine the rate of compensation, and maintain employment records of employees at Sing Sing Correctional Facility.

14. At all times material, Defendant, MICHAEL AITCHISON is a male residing in the State of New York. Upon information and belief, AITCHISON was employed by Defendants as a Supervising Social Worker at Sing Sing Correctional Facility. By virtue of this position, ATICHISON had supervisory authority over the Plaintiff.

15. At all times material, Defendant, DINA MARQUEZ, is a female residing in the State of New York. Upon information and belief, MARQUEZ was employed by Defendants as a Forensic Unit Chief at Sing Sing Correctional Facility. By virtue of this position, MARQUEZ had supervisory authority over the Plaintiff and had the authority to make employment decisions concerning Plaintiff.

**MATERIAL FACTS**

16. At all times material, Defendants owned, operated, and conducted business at the Sing

Sing Correctional Facility located at 354 Hunter Street, Ossining, New York, 10562.

17. On or about October 12, 2017, Respondent NYS hired Plaintiff as an Associate Psychologist at the Sing Sing Correctional Facility.

18. At all times material, Plaintiff was a hard-working, dedicated, and passionate employee. At no time during her employment did she receive negative feedback from her supervisors regarding her work performance or her relationship with inmates.

19. Upon beginning her employment in October 2017, Plaintiff was exposed to discriminatory and highly inflammatory language from Defendants' employees, who used coarse language to ridicule and humiliate inmates at the facility based on their race, sex/gender, and disability. These comments shocked, offended, upset, alienated, and unreasonably interfered with the duties of Plaintiff, whose job was to treat patients at the facility.

20. By way of example, in or around October 2017 and continuing throughout the course of her employment, AITCHISON regularly referred to inmates as "lame ducks," "limited," and "thugs," which Plaintiff understood to refer to inmates' disabilities and race.

21. Further, on multiple occasions, AITCHISON and other employees of Defendants ridiculed and mocked a transgendered inmate, saying detainment in a corrections facility she was "her honeymoon." Defendants' employees, including ATICHISON also knowingly and intentionally refused to refer to the transgendered inmate by her identified gender pronoun, knowing this act upset Plaintiff and her colleagues and also provoked the inmate.

22. In addition to these disparaging comments, Defendants' employees, including AITCHISON, engaged in discriminatory and prejudicial conduct detrimental to the physical and mental health of the patients on the basis of their race, sex/gender, and disabilities. This conduct shocked and offended Plaintiff and unreasonably interfered with her duties as a mental health professional.

23. By way of example, inmates with PTSD, borderline personality, and schizophrenia, among other disorders, were often ignored and/or provided less attention from mental health staff than other patients. In fact, where an inmate was actually or apparently disabled or aggressive, AITCHISON and other employees Defendants would purposefully skip the inmate during morning rounds, resulting in disparate mental health treatment among the facility's inmates.

24. Moreover, AITCHISON often disregarded the health status of these patients, calling them "anti-social," "lame ducks," or "thugs" whom he "couldn't be bothered" to help. Plaintiff understood these comments to be direct references to inmates' races and disabilities.

25. As a result of above mentioned "skipped" rounds, certain inmates were also denied facility "incentives." Incentives are equivalent to points, which are given to inmates with marked progress and can be used to purchase commodities in the prison, such as soap and snacks.

26. Plaintiff was disgusted, offended, and made uncomfortable by the aforementioned conduct and comments by Defendants' employees, including AITCHISON. Furthermore, said conduct and comments unreasonably interfered with her ability to

do her job, which involved close interaction with the very inmates that were being ridiculed and subjected to discrimination.

27. As a result, in or around late October 2017, Plaintiff complained to her immediate supervisor, Defendant's employee Licensed Psychologist MARGARET OLAVE, regarding AITCHISON and others' discriminatory comments and conduct toward the inmates.

28. Upon information and belief, OLAVE, took no corrective action on Plaintiff's complaints. Instead, OLAVE dismissed Plaintiff's complaints stating in sum and substance that, "it is what it is, he (AITCHISON) has been here for a long time." Plaintiff understood her supervisor's comments to mean that Plaintiff should not make any further complaints about AITCHISON's behavior.

29. After Plaintiff complained to OLAVE in October 2017, the discriminatory comments and conduct continued unabated, further creating a hostile work environment wherein Plaintiff was continually exposed to offensive, degrading, and discriminatory commentary.

30. For example, in and around November of 2018, AITCHISON provoked mentally disturbed patients by intentionally angering them during his rounds. Specifically, AITCHISON invaded the personal space of mentally-ill inmates and used aggressive behavior to intimidate them. Plaintiff witnessed first-hand how the patients with severe mental disorders and disabilities were negatively affected by these acts. The above conduct detrimentally affected Plaintiff's ability to interact with inmates in furtherance of her work.

31. Moreover, the effects of these provocations negatively impacted Plaintiff's psychological counseling groups, as Plaintiff was forced to calm agitated and distressed patients who were subjected to the above mentioned comments and conduct.

32. Then, on or about January 9, 2018, Plaintiff attended a team meeting with AITCHISON and other employees of Defendants.

33. At said team meeting, Plaintiff described an African American patient who was having problems sleeping.

34. In addition to his usual discriminatory commentary on the "thugs" and "lame ducks" who occupied the facility, AITCHISON brushed aside Plaintiff's description of her patient's problems, saying, "crime comes out in the dark." From AITCHISON's facial expression and tone, Plaintiff understood AITCHISON's comments to have racial undertones. Plaintiff further understood AITCHISON's comments as dismissive of Plaintiff's efforts to fulfill her professional duties.

35. The next day, on or about January 10, 2018, a frustrated Plaintiff and a fellow co-worker discussed the ceaseless discriminatory comments and conduct by AITCHISON and others employees of Defendants and contacted Defendants' employee and Unit Chief DINA MARQUEZ and complained about said comments and conduct.

36. Two days later, on or about Friday, January 12, 2018, Plaintiff was notified by Defendants that she was placed on "administrative leave."

37. At this time, Defendants did not provide Plaintiff with an explanation why she was placed on administrative leave.

38. Within days after being placed on administrative leave, Plaintiff learned that Defendants had performed a search of her office. Even after these actions, Plaintiff was still not notified why she was placed on administrative leave.

39. On or about January 25, 2018, Plaintiff received a termination letter from Defendants.

40. Defendants' letter stated the reason Plaintiff was terminated was her failure "to meet the minimum standards as a probationary employee."

41. Upon information and belief, MARQUEZ, was involved in the decision to terminate Plaintiff's employment.

42. Plaintiff appealed her termination. At her hearing on January 29, 2018, Plaintiff met two administrators, Defendants' employees MS. CRESSWELL and MS. HALPIN. Neither administrator had any knowledge of the facts of Plaintiff's termination.

43. Despite this lack of factual knowledge, on or about February 20, 2018, Plaintiff received a letter upholding her termination on the basis that "no new information" was found regarding her termination.

44. In the beginning of February, 2018, Plaintiff applied for unemployment benefits.

45. In and around the end of February 2018, Claimant received a call from the Department of Labor's unemployment office. In that call, the unemployment office stated Defendants were disputing Plaintiff's unemployment claim.

46. Further, the unemployment office told Plaintiff that Defendants claimed Plaintiff was fired for "inappropriate contact with inmates." This shocked Plaintiff because she had never previously been accused of doing anything inappropriate with an inmate, and because Defendants' termination justification to the Department of Labor was

different than their termination justification in the previously mentioned January 25th letter.

47. In and around March 14, 2018, Plaintiff filed a charge of discrimination with the EEOC.

48. Defendants responded to Plaintiff's EEOC charge by providing a position statement which included several attachments.

49. In Defendant's position statement, they allege, for the first time, that the reason Plaintiff was terminated was because in January 2018 she failed to report receiving a letter from an inmate and because she failed to report that she suspected another inmate had masturbated in front of her.

50. Notably, Plaintiff had, in fact, informed her direct supervisor, Defendant's employee Licensed Psychologist MARGARET OLAVE, of each of these incidents within a day of each occurrence.

51. Moreover, Defendants' Attachment G to their EEOC position statement includes an email from Defendants' employee, Deputy Chief CHRISTIAN NUNEZ, which admits "Ms. Marquez further advised that supervisor Olave waited (1) week to report Ms. Gepp and reported it in passing while talking about an intern with boundary issues."

52. Therefore, Defendants attachments to their own position statement undermine their justification for Plaintiff's termination, as Defendants admit Plaintiff did report these incidents to her supervisor. Whether Plaintiff's supervisor failed to communicate what Plaintiff had told her is no fault of the Plaintiff's.

53. Importantly, as mentioned above, Plaintiff was placed on administrative leave two days after filing a complaint against AITCHISON to MARQUEZ. MARQUEZ, upon information and belief, was then directly involved in Defendants' decision to terminate the Plaintiff, but the justification for her termination, i.e. that Plaintiff failed to report incident involving inmates, is belied by Defendants' own evidence in support of their position, which shows Plaintiff did report those incidents.

54. Based on the above, Plaintiff was retaliated against for making a complaint, and Defendants shifting justifications for their adverse employment decision against Plaintiff is merely pretext.

55. Defendants' statements to the Department of Labor and EEOC were false and slanderous and made in retaliation for her objection and exposure to Defendants unlawful discriminatory practices.

56. As a result of Defendants' actions, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, benefits and other compensation which such employment without unlawful discrimination entails. In fact, upon information and belief, the Defendants' designation as to the grounds for termination severely affects Plaintiff's ability to apply for future employment at correctional facilities.

57. By way of example, in and around February 5, 2018, Plaintiff interviewed with the clinical director of Rikers Island regarding a mental health position. Thereafter, upon information and belief, Rikers contacted Defendants' regarding Plaintiff and Defendants further retaliated against her by spreading false and slanderous allegations against the Plaintiff to her potential employer.

58. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

59. As a result of Defendants' discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer severe emotional distress.

60. As a result of Defendants' unlawful and discriminatory actions, Plaintiff, has endured unwarranted financial hardships.

61. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits, and other compensation, which such employment entails. Plaintiff will also suffer future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

62. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages against Defendants.

63. The above-cited conduct and comments are just some examples of unlawful, discriminatory, and retaliatory conduct to which Defendants subjected Plaintiff.

64. Defendants' conduct constitutes comments and conduct under the continuing violation doctrine. Plaintiff claims a continuous practice of discrimination occurred and makes all claims herein under the continuing violations doctrine.

**AS A FIRST CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER TITLE VII**
**(not against individual defendants)**

65. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

66. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(a) *[Section 703] provides that it shall be an unlawful employment practice for an employer:*

    (a) Employer practices: It shall be an unlawful employment practice for an employer:

    (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

67. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e *et seq.*, by discriminating against Plaintiff on the basis of her sex/gender, together with creating a hostile work environment and retaliating against her based on complaints about the same.

68. Plaintiff hereby makes a claim against Defendants under all the applicable paragraphs of Title VII.

69. Defendants violated the above and Plaintiff suffered damages as a result.

**AS A SECOND CAUSE OF ACTION
FOR RETALIATION UNDER TITLE VII
(not against individual defendants)**

70. Plaintiff repeats, reiterates and realleges each and every allegation made in paragraphs

of this Complaint as if more fully set forth herein at length.

71. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) *[Section 704]* provides that it shall be unlawful employment practice for an employer:

"(1) to …discriminate against any of his employees … because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

72. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e *et seq*. by retaliating against Plaintiff with respect to the terms, conditions or privileges of employment because of his opposition to the unlawful employment practices of Defendants.

73. Defendants violated the above and Plaintiff suffered and continues to suffer damages as a result.

## AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER NEW YORK STATE LAW

74. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

75. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to

discriminate against such individual in compensation or in terms, conditions or privileges of employment."

76. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of his sexual orientation.

77. Plaintiff hereby makes a claim against Defendant under all of the applicable paragraphs of Executive Law Section 296.

78. Defendants violated the above and Plaintiff suffered and continues to suffer damages as a result.

## AS A FOURTH CAUSE OF ACTION FOR RETALIATION UNDER NEW YORK STATE LAW

79. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

80. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

81. Defendants engaged in an unlawful discriminatory practice by retaliating, and otherwise discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of Plaintiff's opposition to the unlawful practices of Defendants.

82. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law § 296.

83. Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS A FIFTH CAUSE OF ACTION
### FOR AIDING AND ABETTING UNDER
### NEW YORK STATE LAW

84. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of the complaint.

85. New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of ay of the acts forbidden under this article, or to attempt to do so."

86. Defendant engaged in an unlawful discriminatory practice by aiding, abetting, compelling and/or coercing the discriminatory behavior as stated herein.

87. Defendants violated the above and Plaintiff suffered numerous damages as result.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment against the Defendants jointly and severally for all available damages including but not limited to emotional distress, lost wages, back pay, front pay, punitive damages, statutory damages, attorney's fees, costs, medical expenses, interest and all other damages as are just and proper to remedy Defendants' unlawful employment practices.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues properly triable thereby

Dated: New York, New York

    December 20, 2018

                              Respectfully Submitted,

                         **DEREK SMITH LAW GROUP, PLLC.**

By: _____/s/_____
                Kyle Bruno, Esq.
                One Penn Plaza, Suite 4905
                New York, N.Y. 10119
                 (212) 587-0760